UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UKRAINIAN AUTOCEPHALOUS
ORTHODOX CHURCH and
FR. IVAN TELEBZDA,                                   Case No. 07-14306

       Plaintiffs,                                        Hon. Victoria A. Roberts

v.

MICHAEL CHERTOFF, Secretary,
Department of Homeland Security, and
EMILIO GONZALEZ, U.S. Citizenship
and Immigration Services,

       Defendants.
_____

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

       This matter is before the Court on cross Motions for Summary Judgment filed by the parties.  The Court DENIES Plaintiffs' Motion and GRANTS Defendants' Motion.

**II.   BACKGROUND**

       The facts are taken from the Administrative Record and the parties' Statements of Facts.  On August 21, 2006, Plaintiff Ukrainian Autocephalous Orthodox Church ("Church") filed a Form I-360, Petition for Amerasian, Widow, or Special Immigrant, with the United States Citizenship and Immigration Services ("USCIS"), on behalf of Plaintiff Father Ivan Telebzda ("Telebzda"). Telebzda is a native and citizen of the Ukraine.  He first entered the United States on February 15, 2004 as a non-immigrant religious

worker on a R-1 visa.   He is married and has two children.

The Church petitioned for Telebzda to become a permanent resident so he could take over some of the responsibilities of the Church's 83 year old archbishop, who is unable to conduct all church affairs on his own.  The Church says it successfully petitioned to bring at least eight other priests and church personnel to the midwest area over the past 15 years, all of whom received work visas or green cards. (The Church does not provide any documentary evidence indicating the type of petition filed or the registration numbers for these individuals, and no such information is in the administrative record).

On May 19, 2007, the USCIS denied the Church's Form I-360 because its evidence did not establish that the Church would qualify as a tax-exempt religious organization under §501(c)(3) of the Internal Revenue Code of 1986 ("§501(c)(3)").

Plaintiffs timely filed an administrative appeal of the denial to the USCIS Administrative Appeals Office ("AAO").  On *de novo* review, the AAO determined that Plaintiffs failed to establish that the Church would qualify as a tax-exempt religious organization under §501(c)(3) or that it had the ability to pay Telebzda the proffered wage.  Accordingly, on September 12, 2007, the AAO dismissed the appeal.

On October 11, 2007, Plaintiffs filed this action for judicial review under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702 and 706. (Doc. 1).  They say Defendants committed legal error in their determination that the Church does not qualify as a tax exempt organization; this is the only issue Plaintiffs challenge.  Plaintiffs ask the Court to grant summary judgment in their favor.

After this action was filed, the AAO *sua sponte* reopened the proceedings to

enter a new decision, and again denied the Petition on January 8, 2008. In addition to the original ground cited by the USCIS, the AAO cited two additional grounds which precluded approval of the petition: (1) the Church did not establish that it had the ability to pay Telebzda the proffered wage, and (2) the evidence did not show that Telebzda was continuously engaged in full-time paid employment as a minister or priest for the two years preceding the filing of the Form I-360. The AAO gave Plaintiffs 60 days to supplement the record. However, the AAO noted that based on binding precedent, it would not consider later submitted evidence that had not been submitted when originally requested by the Director.

On June 5, 2008, the AAO upheld its decision that the petition would remain denied and dismissed the appeal. The AAO noted that Plaintiffs submitted new documents, letters, and arguments from counsel, but determined that none of the documents: (1) met the regulatory requirements at 8 C.F.R. § 204.5(m)(3)(I); (2) established petitioner's ability to compensate Telebzda; or (3) established that Telebzda was engaged in qualifying employment continuously throughout the two years immediately prior to the filing date of the petition.

In requesting summary judgment, Defendants argue that the agency's denial of the Church's Form I-360 petition was not arbitrary, capricious, or an abuse of discretion, and that it was in accordance with the law.

### III.   STANDARD OF REVIEW

    **A.  Rule 56 Summary Judgment Standard**

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### B. Judicial Review under the APA

A final agency action is subject to a deferential standard of judicial review under the APA. See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984). An agency's action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(a). In making this finding, the Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The Court may not substitute its judgment for that of the agency. *Id.* The Court's role is to ensure that the agency's decision was based on relevant factors and not a "clear error of judgment." *Id.*

The Court must defer to the agency's interpretation of its own regulations unless the text is unambiguous or the agency's interpretation is "plainly erroneous or

inconsistent with the regulation," *Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474-75 (6th Cir. 2008), and that deference does not depend on the agency crystallizing its construction through formal rulemaking or adjudication, see *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust*, 410 F.3d 304, 319 (6th Cir. 2005).

IV.   ANALYSIS

    A.   **Deference under the Rule of *Chevron***

        I. Tax-exempt Status

Plaintiffs challenge the denial of a "special immigrant religious worker" visa for Telebzda. They say that the pertinent statute and regulations do not require a petitioner to complete IRS forms to be considered a bona fide nonprofit religious organization for purposes of petitioning for a special immigrant minister, and that this type of rulemaking, through requests for evidence, violates the APA.

Defendants counter that although the Church submitted its articles of incorporation, bylaws and Bishop Bykowetz's letter asserting that the Church qualifies for tax-exempt status under § 501(c)(3), the Church did not submit any of the documentation required by 8 C.F.R. § 204.5(m)(3)(I) to establish that it had been granted, or was eligible for, tax-exempt status. Based on the evidence submitted, Defendants say the AAO properly concluded that the Church had not met its burden to establish that it was eligible for tax-exempt status.

The first issue raised by Plaintiffs is whether this Court must defer to the agency's interpretation of the statute and regulations. A court's review of an agency's

action for arbitrary and capricious conduct is an extremely deferential one. See *Chevron,* 467 U.S. at 844.  The first step of the *Chevron* test requires the reviewing court to examine the plain meaning of the statute to determine whether Congress has spoken to the precise question at issue. *Chevron,* 467 U.S. at 842.  If it has, the court must give effect to the clearly expressed intent of Congress. *Id.* at 842-843.  Under the second step, if the statute is silent or ambiguous, the agency's interpretation should be upheld so long as it is a "permissible construction of the statute." *Id.* at 843.

   Under the version of the statute in effect at the time Plaintiffs' petition was filed, a minister could qualify for a special immigrant religious worker visa only if he: (1) for at least two years, has been a member of a "religious denomination having a bona fide nonprofit, religious organization in the United States", (2) "seeks to enter the United States ... solely for purpose of carrying on the vocation of a minister of that religious denomination," and (3) "has been carrying on such vocation ... continuously for at least the [immediately preceding] 2-year period." 8 U.S.C. § 1101(a)(27)(C) (2006).  The burden of proof to establish a visa classification is on the petitioner. 8 U.S.C. § 1361.

   The statutory requirements were restated in regulatory form at 8 C.F.R. § 204.5(m):

> (m) Religious workers -- (1) An alien, or any person in behalf of the alien, may file an I-360 visa petition for classification under section 203(b)(4) of the Act as a section 101(a)(27)(C) special immigrant religious worker. Such a petition may be filed by or for an alien, who (either abroad or in the United States) for at least the two years immediately preceding the filing of the petition has been a member of a religious denomination which has a bona fide nonprofit religious organization in the United States. The alien must be coming to the United States solely for the purpose of carrying on the vocation of a minister of that religious denomination, working for the organization at the organization's request in a professional capacity in a religious vocation or occupation for the organization or a bona fide

>organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 at the request of the organization. All three types of religious workers must have been performing the vocation, professional work, or other work continuously (either abroad or in the United States) for at least the two-year period immediately preceding the filing of the petition. Professional workers and other workers must obtain permanent resident status through immigration or adjustment of status on or before September 30, 1997, in order to immigrate under section 203(b)(4) of the Act as section 101(a)(27)(C) special immigrant religious workers.

8 C.F.R. § 204.5(m)(1) (2006).

As used in 8 C.F.R. § 204.5(m), a "bona fide nonprofit religious organization in the United States" means an organization exempt from taxation as described in § 501(c)(3) as it relates to religious organizations, or one that has never sought such exemption but establishes to the satisfaction of the Service that it would be eligible if it had applied for tax exempt status.  8 C.F.R. § 204.5(m)(2) (2006).

The statute does not specify what type of evidence is necessary to satisfy the USCIS regarding tax exempt eligibility. Thus, it cannot be said that Congress spoke with clarity.  However, "[t]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974).

Under the APA standard, an agency must "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29 (1983).  Normally, an agency rule would be arbitrary and capricious if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect

of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Id.* at 43.

In determining that the evidence submitted by Plaintiffs was deficient, the USCIS initially reviewed the petition and Bishop Bykowetz's letter. The USCIS issued a request for evidence ("RFE") seeking additional information to determine whether the Church qualified as a nonprofit organization; the USCIS instructed Plaintiffs to submit an IRS § 501(c)(3) Tax Exempt Certification, or in the alternative: (1) a completed Form 1023, (2) the Schedule A supplement that applies to churches, and (3) a copy of the organizing instrument of the church which contained a proper dissolution clause and that specifies the purpose of the organization.

In response, Plaintiffs submitted copies of previously submitted documents, including Bishop Bykowetz's letter and Articles of Incorporation from the State of Michigan; neither the Form 1023, nor the Schedule A supplement was included. Plaintiffs claimed to include the Schedule A supplement, but no such document was submitted.  Thus, despite being notified of the deficiencies and given an opportunity to supplement the record, Plaintiffs failed to submit the requested documentation.  On appeal, Plaintiffs submitted a draft of Schedule A, but a completed Form 1023 was not included.  Plaintiffs did not contest the finding that they previously failed to submit Form 1023 or Schedule A.  Plaintiffs' counsel claimed then -- as she does now -- that Schedule A was not required.

Plaintiffs argue that the Schedule A supplement states that churches need not apply for tax exempt status, but rather they are automatically tax exempt by virtue of

8

being churches.  Plaintiffs say § 501(c)(3) only requires a church to show the following: (1) the organization must be organized and operated exclusively for religious, educational, scientific, or other charitable purposes; (2) net earnings may not inure to the benefit of any private individual or shareholder; (3) a substantial part of its activity may not be to influence legislation; (4) the organization may not intervene in political campaigns; and (5) the organization's purposes and activities may not be illegal or violate fundamental public policy.  Plaintiffs say Bishop Bykowetz's letter clearly explained that the Church met these requirements and presented evidence.

Defendants acknowledge that a church is not required to apply for IRS recognition as a tax exempt religious organization to enjoy tax exempt status.  However, they say that 8 C.F.R. § 204.5(m) does not indicate that a church can establish tax exempt status for immigration purposes simply by asserting that it is a church.  They say the evidence requested of Plaintiffs was what the IRS requires when a religious organization seeks recognition of tax-exempt status. Thus, they did not engage in rulemaking.

Organizations, including churches and religious organizations, that wish to be recognized as tax exempt under § 501(c)(3) must use Form 1023.  See http://www.irs.gov/pub/irs-pdf/p1828.pdf, visited April 28, 2009.  The following information must be included in exemption applications filed by religious and apostolic organizations claiming exemption: (1) a copy, including amendments, of the organization's articles of association, articles of incorporation, or other document authorizing its formation; (2) a copy of the bylaws or other code of regulations under which the organization operates or plans to operate; (3) a complete statement of assets

and liabilities as of the end of each annual accounting period, or as of the date of the filing of the application, if the organization has been in existence for less than a year; (4) a statement of receipts and expenditures for each annual accounting period or for the period for which the organization has been in existence, if less than a year; and (5) a written statement showing: (a) the character, purposes, and activities (present or proposed) of the organization; (b) whether the organization maintains a common or community treasury; (c) whether all members of the organization live in a communal manner; (d) whether the members may own, in their own names, any real or personal property; (e) whether the members must furnish their own support (food, clothing, and shelter); and (f) the requirements for membership, method of admission of members, the rights of members to property owned at the time of admission, and the rights of those terminating membership to share in the property of the organization, or to a return of any property contributed. Rev Proc 72-5 (1972) 1972-1 CB 709.

      Although a church may be considered automatically tax exempt, in order to obtain definite recognition of tax exempt status from the IRS, a church must comply with these requirements.  It was reasonable for the USCIS to require Plaintiffs to submit the requested evidence to determine their tax exempt status under § 501(c)(3), where neither the statute, nor the regulations expressly allows a religious organization to prove tax exempt status for immigration purposes merely by asserting that it is a church.  The Court agrees that in the absence of Form 1023 and Schedule A, Bishop Bykowetz's letters and supporting documents did not rise to the level of the documentary evidence required by 8 C.F.R. § 204.5(m).

      Notably, in November 2008, the Service acted to clear up any confusion

regarding the evidence necessary to establish tax exempt eligibility. The regulation now requires a qualified, bona fide non-profit religious organization to be tax exempt and possess a valid IRS determination letter:

> Bona fide non-profit religious organization in the United States means a religious organization exempt from taxation as described in *section 501(c)(3) of the Internal Revenue Code of 1986*, subsequent amendment or equivalent sections of prior enactments of the Internal Revenue Code, and possessing a currently valid determination letter from the IRS confirming such exemption.

8 C.F.R. § 204.5(m) (2008).

The USCIS did not act arbitrarily and capriciously in requiring Plaintiffs to submit completed IRS forms to establish tax exemption eligibility under § 501(c)(3) or in determining that Plaintiffs' evidence was insufficient to support their petition.

### ii. Ability to Compensate Father Telebzda

The relevant regulation provides that:

> Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements.

8 C.F.R. § 204.5(g)(2). The nonexistence or other unavailability of required evidence creates a presumption of ineligibility. 8 C.F.R. § 103.2(b)(2)(I).

Plaintiffs don't address this issue; they only challenge the ruling regarding tax exempt status. Defendants say the Church submitted none of the required documentation and did not adequately show how it would support Telebzda. Defendants say the Church submitted bank statements, but provided no records

11

indicating how many employees were paid from these accounts or whether Telebzda was paid out of these accounts. Defendants also say the evidence of the Church's other assets was meaningless in the absence of information regarding the Church's liabilities.

The AAO also noted deficiencies in the evidence supporting the Church's assertion that it was providing room and board for Telebzda. For example, the Church's initial submission contained no specific information about his proposed compensation. The Church asserted that "church laws" required the church to support all clergy, but submitted no copy of the "church laws."

The Director, in a RFE, instructed Plaintiffs to submit evidence of the Church's ability to pay the beneficiary's wage. In response, Bishop Bykowetz asserted that the Church Patriarchate in Kiev would send extra funds if needed, but the Patriarchate does not release his financial records. There was no documentary evidence to support the claim the Church paid Telebzda $15,000.00 per year as specified in the Form I-129. The Church's bank records did not show whether Telebzda or other employees were paid from the Church bank accounts. The Church did not say how many employees it had, to allow the USCIS to calculate its ability to compensate Telebzda and other workers.

Likewise, there was no documentary evidence to support the Church's assertion that it paid for Telebzda's residences since he arrived in the United States. Telebzda's mortgage was in his and his spouse's name. The Church's bank documents did not show that the Church made the $287.00 monthly loan payments.

Plaintiffs' counsel indicated for the first time after reopening of the petition, that

Telebzda's residences in 2004 and 2005 were paid for "by a number of parishioners of St. Andrew Ukrainian Orthodox Church." However, 8 C.F.R. § 204.5(g)(2) states that the petition must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. Additionally, Plaintiffs did not submit any of the types of evidence required by 8 C.F.R. § 204.5(g)(2), *i.e.*, copies of annual reports, federal tax returns, or audited financial statements.

Accordingly, the AAO did not act arbitrarily or capriciously in concluding that the evidence submitted by Plaintiffs was insufficient to show that the Church had the ability to pay Telebzda the proffered wage.

### iii. Full-Time Employment as a Priest or Minister for the Preceding Two Years

The applicable statutes and regulations neither expressly require religious workers to carry on their vocations full time during the two years preceding their petitions, nor expressly foreclose such a reading. The AAO's adoption of a full-time employment requirement accords with *Matter of Faith Assembly Church*, 19 I. & N. Dec. 391 (BIA 1986), in which the BIA held that "part-time ministerial employment" did not qualify a minister for special immigrant classification under a prior version of § 1101(a)(27)(C). *Id.* at 393. The BIA explained that the statute "requires the minister to have been and intend to be engaged solely as a minister of a religious denomination." *Id.*

In *Hawaii Saeronam Presbyterian Church v. Ziglar*, 243 Fed. Appx. 222 (9th Cir. 2007), the Court ruled that the BIA's decision in *Matter of Faith Assembly Church* was neither arbitrary nor manifestly contrary to the statute. There, the Church also

13

challenged the AAO's interpretation that § 1101(a)(27)(C) requires a showing that the minister worked full time as a minister during the two years immediately preceding the visa petition. The Court concluded that it was reasonable for the AAO to follow the BIA's lead and require a showing of full-time employment.

Plaintiffs do not address this issue. Defendants say Plaintiffs did not demonstrate that Telebzda was employed full time during the two years preceding the petition. In support of Plaintiffs' claim, Bishop Bykowetz stated that he invited Telebzda to serve at the St. Anthony Monastery in Knox, Indiana on February 12, 2004. Bishop Bykowetz said Telebzda served there until July 15, 2005, when he was transferred to St. Andrews Parish in Detroit, Michigan. Bishop Bykowetz claimed that Telebzda used a Detroit mailing address during the time of his service in Knox, Indiana. However, he did not explain why Telebzda would use a Detroit mailing address if he actually lived 200 miles away. He also did not explain how Telebzda would have legitimately obtained a Michigan identification card if his actual address was in Indiana.

The USCIS determined that these conflicting assertions undermined the credibility of the Church's timeline for Telebzda's claimed employment in Indiana during the two-year qualifying period. This conclusion was reasonable. See *Matter of Ho*, 19 I. & N. Dec. 582, 591-92 (BIA 1988) ("Attempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice."). It also was reasonable for the AAO to require Plaintiffs to establish that Telebzda was employed full time during the two years preceding their petition.

The AAO did not act arbitrarily or capriciously in concluding that Plaintiffs' evidence did not establish that Telebzda was employed by the Church as a priest on an

exclusive, full-time, compensated basis throughout the two-year qualifying period of August 2004 through August 2006.

### B. Abuse of Discretion

Plaintiffs say Defendants abused their discretion by requiring Plaintiffs to submit completed IRS forms to be considered a bona fide nonprofit religious organization for purposes of petitioning for a special immigrant minister. The first requirement of 8 C.F.R. § 204.5(m) is for the submission of "initial evidence" in support of a petition for special immigrant status:

> (3) Initial evidence. Unless otherwise specified, each petition for a religious worker must be accompanied by:
>
> (I) Evidence that the organization qualifies as a nonprofit organization in the form of either:
>
> (A) Documentation showing that it is exempt from taxation in accordance with section 501(c)(3) of the Internal Revenue Code of 1986 as it relates to religious organizations (in appropriate cases, evidence of the organization's assets and methods of operation and the organization's papers of incorporation under applicable state law may be requested); or
>
> (B) Such documentation as is required by the Internal Revenue Service to establish eligibility for exemption under section 501(c)(3) of the Internal Revenue Code of 1986 as it relates to religious organizations; and
>
> (ii) A letter from an authorized official of the religious organization in the United States which (as applicable to the particular alien) establishes:
>
> (A) That, immediately prior to the filing of the petition, the alien has the required two years of membership in the denomination and the required two years of experience in the religious vocation, professional religious work, or other religious work; and
>
> (B) That, if the alien is a minister, he or she has authorization to conduct religious worship and to perform other duties usually performed by authorized members of the clergy, including a detailed description of such authorized duties. In appropriate cases, the certificate of ordination or authorization may be requested;

>or
>
>(C) That, if the alien is a religious professional, he or she has at least a United States baccalaureate or its foreign equivalent required for entry into the religious profession. In all professional cases, an official academic record showing that the alien has the required degree must be submitted; or
>
>(D) That, if the alien is to work in another religious vocation or occupation, he or she is qualified in the religious vocation or occupation. Evidence of such qualifications may include, but need not be limited to, evidence establishing that the alien is a nun, monk, or religious brother, or that the type of work to be done relates to a traditional religious function.
>
>(iii) If the alien is to work in a non-ministerial and non-professional capacity for a bona fide religious organization which is affiliated with the religious denomination, the letter from the authorized official must explain how the affiliation exists. A tax-exempt certificate indicating that the affiliated organization is exempt from taxation in accordance with section 501(c)(3) of the Internal Revenue Code of 1986 as it relates to religious organizations is required in this instance.

8 C.F.R. § 204.5(m)(3).

If the petitioner does not submit an IRS 501(c)(3) Tax Exempt Certification, then the regulation clearly requires the petitioner to submit documentation required by the IRS to establish tax exempt eligibility, along with a letter from an authorized official of the religious organization in the United States which establishes four factors about the beneficiary. 8 C.F.R. § 204.5(m) gives the USCIS the discretion to determine whether an organization that has never sought tax exempt status under IRC 501(c)(3) would be eligible if it had applied for recognition of tax exempt status. The USCIS interpreted its regulation to require a petitioner to submit a completed IRS Form 1023 and Schedule A supplement to establish tax exempt eligibility. As stated above, that interpretation was reasonable.

Plaintiffs initially submitted the petition, the Church's Articles of Incorporation, a copy of the Church's 2003 by-laws, and Bishop Bykowetz's February 23, 2004 letter.

16

The USCIS concluded this evidence was deficient and then requested further documentation pursuant to 8 C.F.R. § 204.5(m)(3)(iv), which provides:

> In appropriate cases, the director may request appropriate additional evidence relating to the eligibility under section 203(b)(4) of the Act of the religious organization, the alien, or the affiliated organization.

It is clear that the USCIS' request for additional information falls within the scope of 8 C.F.R. § 204.5(m)(3).

The administrative record demonstrates that on January 8, 2007, prior to adjudication of the petition, Plaintiffs were notified of the deficiency and given the opportunity to provide the requested information regarding tax exempt eligibility. In response, Plaintiffs submitted Bishop Bykowetz's letter and Articles of Incorporation from the State of Michigan. In the denial of Plaintiffs' petition, the Director expressly listed the information Plaintiffs failed to provide to cure the deficiencies in their petition. On appeal, Plaintiffs were given an opportunity to submit a brief and/or additional evidence in support of the petition. Thus, Plaintiffs were given two opportunities to properly supplement their evidence and failed to do so.

The AAO did not abuse its discretion in requiring Plaintiffs to submit completed IRS forms to establish tax exempt eligibility or in determining that Plaintiffs' evidence was insufficient to support their petition.

**V.      CONCLUSION**

Because the denial of Plaintiffs' I-360 Petition was not arbitrary or capricious, and was in accordance with law, the Court **DENIES** Plaintiffs' Motion for Summary Judgment and **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS ORDERED.**

                                                         S/Victoria A. Roberts
                                                        Victoria A. Roberts
                                                        United States District Judge

Dated: May 4, 2009

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 4, 2009.

s/Carol A. Pinegar
Deputy Clerk

---